UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MANUELA Q. FRANCO,                                      Case No. 03-13492 tr7

     Debtor.

Consolidated with:

In re:

MANUELA Q. FRANCO,                                      Case No. 13-12941 tr7

     Debtor.

HIPOLITO Q. FRANCO and
CARLA FRANCO,

     Plaintiffs,

v.                                                                          Adv. No. 16-1074 t

MANUELA Q. FRANCO,
HV FRANCO MINERALS,
ROBERT DENNIS HOUGLAND,
CELIA FRANCO HOUGLAND, and
CLARKE C. COLL,

     Defendants.

## **OPINION**

     Before the Court is Carla Franco's motion for relief from automatic stay, or for a declaration that the automatic stay does not apply. The motion was filed in the consolidated cases. Also before the Court is the chapter 7 trustee's motion to dismiss this adversary proceeding (which was removed from state court) as having been filed in violation of the automatic stay and therefore void. After trial and a review of the relevant law, the Court rules that the automatic stay applies and should not be modified or annulled. Because of that, the Court further rules that the quiet title

count of the adversary proceeding was brought in violation of the automatic stay and is void. The motion to dismiss therefore will be granted in part.

I. FINDINGS OF FACT[1]

For the limited purpose of ruling on the motions, the Court finds:

The Property and the Disputed Mineral Rights. Debtor is an 89-year-old widow. Her husband, Epolito Franco, suffered a series of strokes between 1989-1996, and died in 1997.

In 1969, Epolito and Debtor acquired about 240 acres of land in Eddy County, New Mexico, which included a half interest in oil, gas, and other minerals on and under the land. On October 8, 1996, Epolito and Debtor conveyed 122 acres of the land to their son Hipolito Franco as his sole and separate property (the "Property"). The deed signed by Epolito and Debtor did not reserve any oil, gas, or other minerals (the "Disputed Mineral Rights").

The original agreement between the parties is unclear. Carla Franco, Hipolito Franco's widow,[2] testified that she and Hipolito paid for the Disputed Mineral Rights. Debtor testified that she and Epolito parted with the Property so they could obtain medical care for Epolito. However, she also testified that she and Epolito had always intended to bequeath their mineral rights, including the Disputed Mineral Rights, to their children in equal shares.

The 1998 Loan. In 1998, Hipolito and Carla Franco applied for a loan from Western Commerce Bank. The loan was to be secured by a mortgage on the Property. On July 23, 1998, Guaranty Title Company issued a commitment to insure the bank's first priority mortgage on the Property. The title commitment described the Property as "fee simple in the surface estate only." The metes and bounds description of the Property differed to some extent from that used in the

---

[1] The Court takes judicial notice of the docket. In addition, some of the findings are from a transcript of Debtor's deposition testimony, which the parties agreed to admit.
[2] Hipolito Franco died in about April 2015.

1996 deed.[3] More importantly, the title commitment's legal description begins with "The surface estate only of . . . ." One of the requirements for issuing a final policy of title insurance was:

> Record a correction warranty deed from Manuela Q. Franco, widow of Epolito V. Franco (record his death certificate) to Hipolito Q. Franco, a married man dealing in his sole and separate property.

One of the exceptions to insured title was:

> 11. Title to all of the water, oil, gas and other minerals and mineral substances, together with all right, privileges and easements appurtenant thereto.

On August 7, 1998, Debtor signed a warranty deed in favor of Hipolito Franco. The deed states on page one that it is "given to correct legal description on [the 1996 warranty deed]." The legal description attached is identical to the description in the title commitment, including the "surface estate only" language. Hipolito Franco did not sign the deed.

On August 7, 1998, Hipolito and Carla Franco granted Western Commerce Bank a line of credit mortgage on the Property. The mortgage uses the same legal description as the correction deed and the title commitment (including the "surface estate only" language), except that it also purports to encumber the mortgagors' interest in water and water rights appurtenant to the Property. The mortgage secures a promissory note of $38,898.27 payable to Western Commerce Bank, with a maximum obligation limit of $99,000. The mortgage and "correction deed" were recorded one minute apart.

<u>The Bankruptcy Cases</u>. Debtor filed a chapter 7 case on April 30, 2003, and a second chapter 7 case on September 9, 2013. She received a discharge in each case. The latter case was closed on December 30, 2013.

---

[3] Some survey work may have been done to prepare the legal description in the title commitment. One of the calls in the title commitment legal description is longer by 47.02 feet than the analogous call in the 1996 deed, while another call is shorter by the same amount.

The Debtor scheduled $12,473.42 in unsecured claims the 2013 case, and $20,812.06 in unsecured claims in the 2003 case.

Debtor did not schedule any mineral rights in either case. There is no written evidence that she told her bankruptcy attorneys about any claim to minerals. Manuela did not list Hipolito or Carla Franco as creditors, and they did not receive official notice of either case.

In June 2016, Debtor asked that the 2013 case be reopened so she could amend schedule B and list certain mineral rights. The Court granted the motion and also granted the United States Trustee's motion to reopen the 2003 bankruptcy case. Clarke Coll was appointed the chapter 7 trustee in both cases, which were consolidated. On July 15, 2016, Debtor filed an amended Schedule B, which added the following:

> Mineral Rights and Interest: See attachment for full description. Total mineral acres of 850. Debtor holds ½ interest in mineral acres worth approximately $1,500.00 per acre.

Debtor valued the mineral rights at $637,000. The attachment states that the mineral rights are in three parcels (240 acres, 290 acres, and 320 acres). If the Disputed Mineral Rights are property of the estate, it would be solvent.

The State Court Action. Both before and after filing the bankruptcy cases, Debtor filed documents asserting title to the Disputed Mineral Rights. She also entered into oil leases purporting to lease the Disputed Mineral Rights to third parties.

Carla Franco testified that she first learned about Debtor's claims to the Disputed Mineral Rights in 2014, after being contacted by an oil company. She and Hipolito Franco brought an action against Debtor and others in New Mexico's Fifth Judicial District Court on October 17,

-4-
Case 16-01074-t    Doc 33    Filed 07/28/17    Entered 07/28/17 10:27:18 Page 4 of 13

2014, asserting three claims: for a judgment quieting title to the Disputed Mineral Rights; for damages caused by disparagement of title; and for injunctive relief.[4] The trustee was not named.

Carla Franco filed a motion for summary judgment on the quiet title count on March 23, 2016. On April 5, 2016, Carla Franco's counsel sent an email to Debtor's counsel, informing him of the 2013 bankruptcy case, and pointing out that the Disputed Mineral Rights had not been scheduled. The email contained a thinly veiled threat that Debtor's chapter 7 discharge could be revoked if she pursued her claim to the Disputed Mineral Rights. The email also mentioned federal criminal prosecution and Medicare/Medicaid fraud.

On May 3, 2016, Debtor filed a response to the summary judgment motion, stating in essence that she would not assert an interest in the Disputed Mineral Rights.

On May 4, 2016, Carla Franco filed a Rule 1-1054(b)(1) certification, in which she stated that Debtor had filed for bankruptcy and failed to disclose the Disputed Mineral Rights, and therefore lacked standing to respond to the motion for summary judgment.

On November 4, 2016, the state court entered a judgment that Carla and Hipolito Franco own the Disputed Mineral Rights. Carla Franco's counsel submitted the proposed form of judgment after learning of the bankruptcy cases.

The trustee filed a motion to intervene in the state court action on November 17, 2017. The motion is pending.

On December 23, 2016, Carla Franco removed the state court action to this Court, commencing this adversary proceeding.

II. DISCUSSION

A. The Automatic Stay and Property of the Estate.

---

[4] The state court dismissed the disparagement count. The injunction count is still pending.

When a bankruptcy petition is filed, § 362(a)[5] stays a broad range of proceedings against the debtor, including acts to obtain possession or control over property of the estate. § 362(a)(1) and (3). Property of the estate includes "all legal and equitable interest of the debtor in property as of the commencement of the case." § 541. The automatic stay applies to all estate property, including property that is not disclosed on the debtor's bankruptcy schedules. *PHH Mortgage Corp. v. Dick (In re Dick)*, 2007 WL 490948 (Bankr. D. Kan.); *In re Muhlig*, 494 B.R. 755, 769 (Bankr. S.D. Fla. 2013); *In re Enyedi*, 371 B.R. 327, 333-34 (Bankr. N.D. Ill. 2007).

Property of the estate that is not abandoned under § 554(c) and not administered in the case remains estate property, § 554(c) and (d), even after the case has been closed. § 554(d). That includes unscheduled or "omitted" assets. *In re Kopp*, 374 B.R. 842, 846 (Bankr. D. Kan. 2007); *Clementson v. Countrywide Financial Corp.*, 2011 WL 1884715, at *5 (D. Colo.), *aff'd*, 464 Fed. App'x. 706 (10th Cir. 2012) (unpublished). Thus, the automatic stay applied to any interest Debtor had in mineral rights after the initial bankruptcy filing in 2003, and continues to apply.

      B.      <u>The Stay Applies When Ownership of Estate Property is in Bona Fide Dispute</u>.

The automatic stay applies to estate property, and does not apply to non-estate property. What about property that may, or may not, be owned by the estate? One line of cases holds that the automatic stay applies if the subject property is "arguably" estate property. *See, e.g., Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303-04 (5th Cir. 2005); *In re Levenstein,* 371 B.R. 45, 48 (Bankr. S.D.N.Y. 2007) (adopting the "arguable property" concept); *Taub v. Taub (In re Taub)*, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010), *aff'd*, 2011 WL 1322390 (E.D.N.Y. 2011); *Bohm v. Howard (In re Howard)*, 2010 Bankr. Lexis 5109, at *10 (Bankr. W.D. Pa. 2010) (citing *Chesnut*

---

[5] Unless otherwise noted, all references are to 11 U.S.C.

with approval).  *Cf. Jahr v. Frank (In re Jahr),* 2012 WL 3205417, at *7 (9th Cir. BAP 2012) (distinguishing *Chesnut* but also criticizing the concept of "arguable property" as too expansive).

As stated in *In re Pickel*, 487 B.R. 289 (Bankr. D.N.M. 2013), the "arguable property" standard may be too loose.  However, where the estate's ownership of property is in bona fide dispute, it is reasonable to hold that the stay applies, pending resolution of the dispute.  487 B.R. at 294-95.  The Court is not required to decide the disputes before ruling that the stay applies.  *In re Chesnut*, 422 F.3d at 303-04; *In re Endeavour Highrise, L.P.*, 432 B.R. 583, 630 (Bankr. S.D. Tex. 2010) (court need not decide whether debtor held an interest in property for the stay to apply).

    C.    <u>Ownership of the Mineral Rights is in Bona Fide Dispute</u>.

The Trustee asserts that the Disputed Mineral Rights are estate property because of the 1998 correction deed and the related mortgage transaction.  In *Gonzales v. Gonzales*, 867 P.2d 1220, 1227 (N.M. 1993), the New Mexico Supreme Court held that "[A] correction deed may negate a prior conveyance, although correction deeds are more typically used to correct mistakes such as typographical errors in an original deed.  In theory, a correction deed sets forth what had been intended in the original deed." (citations omitted).  Carla Franco counters that a grantor cannot use a correction deed to unilaterally terminate or revoke an interest conveyed by the original deed.  *See, e.g., Gonzales v. Gonzales,* 867 P.2d at 1226-27 ("In general, once property has been conveyed by deed from the record owner, the person to whom the property has been conveyed owns it."); *Gallups v. Kent*, 953 So.2d 393, 395 (Ala. 2006), *quoting Kirkpatrick v. Ault*, 280 P.2d 637, 641 (Kan. 1955) ("Where the grantor has divested himself of title, although by mistake he has not conveyed the title in the way in which he intended, he cannot b[y] a subsequent conveyance correct his mistake, there being no title remaining in him to convey.") (quotation omitted).

In New Mexico, a deed recorded to revoke a mistaken conveyance may be effective under estoppel by deed or equitable estoppel principles. *Gonzales v. Gonzales*, 867 P.2d at 1227. "Estoppel by deed precludes one party to a deed from asserting as against the other party any right or title in derogation of the deed, or from denying the truth of any material facts asserted in it." *Norman v. State*, 597 P.2d 715, 718 (Mont. 1979), *quoted in Gonzales*, 867 P.2d at 1227. "[A] deed may be corrected by a subsequent instrument ... [w]here there is no fraud and the rights of third parties have not intervened, and equity could have reformed the deed." *Amethyst Land Co. v. Terhune*, 326 P.3d 12, 18 (N.M. 2014), *quoting Missouri Land Dev. I, LLC v. Raleigh Dev., LLC,* 407 S.W.3d 676, 687 (Mo. App. 2013). To apply estoppel by deed or reform a deed because it does not reflect the agreement of the parties, the agreement must have been "clear, definite, and enforceable." *Gonzales v. Gonzales*, 867 P.2d at 1227–28 (declining to apply the doctrine where the later deed merely stated that it intended to change prior deed). *See also Missouri Land v. Raleigh*, 407 S.W.3d at 687 (To reform a deed to correct an alleged clerical error, the party seeking reformation must show: (1) an agreement between the parties that is consistent with the change sought; (2) an error in drafting the deed; and (3) the error was a mutual mistake).

"Equitable estoppel … depends on the conduct of the parties for its efficacy. It is not concerned with the language of the instrument and may actually deny the legal effect of the deed." *Trustees of Internal Improv. Fund v. Lobean,* 127 So. 2d 98, 102 (Fla. 1961), *quoted in Gonzales*, 867 P.3d at 1228. Equitable estoppel may preclude a party from relying on an earlier deed. *Id.*

> Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*Gonzales v. Gonzales*, 867 P.2d at 1228, quoting 3 John N. Pomeroy, *A Treatise on Equity Jurisprudence* § 804, at 189 (Spencer W. Symons ed., 5th ed. 1941). Equitable estoppel requires evidence of the conduct of the party to be estopped, reliance by the other party, and a change of position by that other party. *Gonzales*, 867 P.2d at 1228.

Here, the record is insufficient for the Court to rule on either equitable principle, nor would it be appropriate for the Court to do so. There is enough in the record to show, however, that the Trustee *might* prevail on one of the equitable theories. The Court concludes that there is a bona fide dispute about who has superior title to the Disputed Mineral Rights. The automatic stay therefore applies.

> D. Because the Automatic Stay Applied, the Quiet Title Claim is Void *Ab Initio*.

Carla Franco's quiet title claim was an attempt to obtain possession, control, or ownership of the Disputed Mineral Rights, and violated the automatic stay. § 362(a)(3); *In re Beery*, 378 B.R. 417 (10th Cir. BAP 2007). *See also In re National Cattle Congress, Inc.*, 179 B.R. 588, 595 (Bankr. N.D. Iowa 1995) (§ 362(a)(3) is applied to any act by any entity to obtain possession of property or exercise control over property of the estate). The claim therefore is void *ab initio* and without effect. *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 (10th Cir. 1994), citing *Ellis v. Consol. Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir. 1990); *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990); *In re C.W. Min. Co*., 477 B.R. 176, 192 (10th Cir. BAP 2012) (the effect of violating the automatic stay is to void the action, whatever the context).

Carla Franco argues that some form of *Rooker-Feldman*, claim preclusion, or issue preclusion prevents this court from "overturning" the state court summary judgment. These doctrines do not apply, because the judgment, obtained in violation of the automatic stay, is void and has no effect. *See Matter of Cappadonna*, 154 B.R. 639, 641 (Bankr. D.N.J. 1993) (bankruptcy

court may overturn state court judgment entered in violation of the automatic stay, as it is void), *citing James v. Draper (In re James),* 940 F.2d 46, 52 (3d Cir. 1991) ("Because a void judgment is null and without effect, the vacating of such a judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests."). *See also In re Vierkant*, 240 B.R. 317, 320 (8th Cir. BAP 1999) (judgment entered in violation of automatic stay is void and may not be given collateral estoppel effect).

E. <u>Annulment of the Stay</u>.

Plaintiff argues in the alternative that the stay should be annulled. The Court disagrees.

The Court has authority to "annul" the automatic stay under § 362(d) for cause. Annulment is retroactive relief, allowing the Court to validate actions taken in violation of the stay that would otherwise be void. *See Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 977 (1st Cir. 1997); *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir. 1984); *In re Schumann*, 546 B.R. 223, 228 (Bankr. D.N.M. 2016).

Pursuant to § 362(g), the party opposing relief bears the ultimate burden of proving that a stay annulment request should be denied. *In re Schumann*, 546 B.R. at 229–30. Despite the language of § 362(g), courts have held that stay annulment is extraordinary relief, to be awarded only in rare instances. *See In re Soares*, 107 F.3d at 977; *Schumann*, 546 B.R. at 228. In the Tenth Circuit, annulment to validate an action in violation of the automatic stay should be limited to instances where the movant was honestly ignorant of the stay. *Franklin Sav. Ass'n v. OTS*, 31 F.3d at 1023. However, a debtor should not be allowed to take advantage of the stay where she remains stealthily silent in face of the creditor's action, raising the stay only after losing in state court. *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990). Factors relevant to whether the Court should annul the stay include:

1) whether the creditor had actual or constructive knowledge of the debtor's bankruptcy filing when it acted in violation of the automatic stay;
2) whether the debtor filed the bankruptcy case in bad faith or otherwise acted in bad faith;
3) whether grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation;
4) how quickly the creditor sought annulment of the automatic stay upon learning of the debtor's bankruptcy filing;
5) whether the creditor continued to violate the stay after learning of the debtor's bankruptcy filing;
6) whether the debtor remained "stealthily silent" in the face of the creditor's unknowing violation of the automatic stay; and
7) whether the creditor would be prejudiced if the stay were not annulled.

*In re Schumann*, 546 B.R. at 228-29; *In re Barr*, 318 B.R. 592, 598 (Bankr. M.D. Fla. 2004). The Court analyzes the factors as follows:

| Factor | Discussion |
|---|---|
| | |
| Creditor's knowledge of bankruptcy filing. | There is no evidence Carla Franco had knowledge of the bankruptcy filings when she filed her state court action. However, she knew of the bankruptcies by April 5, 2016, yet continued to seek a quiet title judgment while arguing that Debtor did not have standing to oppose it. |
| Debtor's bad faith. | The bankruptcy petitions were not filed in bad faith. Although failing to disclose assets may be indicia of bad faith, the Court makes no such finding here. *See., e.g., In re Bright*, 338 BR. 530, 536 (1st Cir. BAP 2006). |
| Grounds for relief from stay. | Whether the Disputed Mineral Rights are property of the estate is a core proceeding and would substantially affect the estate. The Court would have allowed the parties to determine ownership in an adversary proceeding. |
| How quickly creditor sought to annul stay. | This factor weighs against Carla Franco. See below. |
| Creditor's continuing violations. | Carla Franco continued to prosecute the state court action after she learned of the bankruptcy cases. Instead of halting the proceeding, she continued to seek summary judgment and argued that Debtor did not have standing to respond.[6] |
| Debtor's silence in face of creditor's unknowing violation. | Debtor did not remain "stealthily silent" or wait for a dispositive ruling to be issued. She likely did not |

---

[6] *See S. Dallas Water Auth. v. Guarantee Co. of N. Am., USA*, 767 F. Supp. 2d 1284, 1297–98 (S.D. Ala. 2011) (upon learning of an unintentional stay violation, creditor must act promptly to restore the pre-violation status quo); *In re Soares*, 107 F.3d at 978 (creditor should not receive retroactive stay relief where it remains silent and allows state court to act in ignorance of stay).

|  | understand the effect of her bankruptcy, or that the Disputed Mineral Rights were property of the estate. In any event, Carla Franco learned of the stay by April, 2016, and was not "unknowing" thereafter. She had a duty to speak up and not continue state court proceedings. |
|---|---|
| Prejudice to creditor. | There would be no prejudice. If the stay were annulled, Carla Franco would have to relitigate the quiet title action because the proper party (the Trustee) was not named. |

Weighing the factors, the Court concludes that annulment of the automatic stay is not appropriate. Here, stay annulment it not advisable because it could remove potentially valuable assets from the estate. *See In re C.W. Min. Co.*, 477 B.R. 176, 191 (10th Cir. BAP 2012) (automatic stay protects creditors by prohibiting the dismembering of the bankruptcy estate), *citing Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.)*, 125 B.R. 963, 971 (Bankr. N.D. Ill. 1990) (automatic stay prevents dismemberment of estate, maintains status quo to ensure orderly liquidation of estate assets, and facilitates administration of estate by allowing court to resolve claims and distribute assets); *In re Muhlig*, 494 B.R. 755, 764-65, 769 (Bankr. S.D. Fla. 2013) (one of the primary purposes of the automatic stay is to preserve estate assets for the benefit of creditors).

F.  Motion to Dismiss.

The Trustee argues this adversary proceeding should be dismissed because it is void *ab initio*. The Court agrees that Count I (Quiet Title) should be dismissed.[7] *See, e.g., Beery v. Gonzales (In re Beery)*, 06-1170, doc. 18, p. 5 (Bankr. D.N.M. 2007) ("Because it was filed in violation of the stay, this Quiet Title Action is void and without effect and will be dismissed."), *aff'd* 378 B.R. 417 (10th Cir. BAP 2007) (unpublished); *In re Kroh Bros. Devel. Co.*, 91 B.R. 525 (W.D. Mo. 1988) (ordering plaintiff to dismiss state court quiet title action initiated in violation of

---

[7] Count Two has already been dismissed. Court Three (Injunction) will not be dismissed because it does not appear to have been brought in violation of the automatic stay.

automatic stay).[8]  As mentioned earlier, dismissal of the quiet title claim will not work a hardship on Carla Franco because the complaint would have to be amended to include the Trustee as a defendant.  *See Smith v. United Parcel Service*, 578 Fed. App'x. 755 (10th Cir. 2014) (trustee was real party in interest and only one who could prosecute claims of the estate); *Bellini Imports, Ltd. v. Mason and Dixon Lines, Inc.*, 944 F.2d 199, 200-01 (4th Cir. 1991) (judgment not enforceable against trustee or assets of estate where stay was in place and trustee was not named defendant).

### III. CONCLUSION

Debtor's claimed ownership of the Disputed Mineral Rights has been estate property since 2003.  There is a bona fide dispute about who owns the rights, so the automatic stay has been in effect since the first case filing.  The Court declines to annul the stay.  Carlo Franco brought the quiet title claim in violation of the automatic stay, so it is void *ab initio*, and will be dismissed.  Appropriate orders will be entered in the main case and the adversary proceeding.

_____
David T. Thuma
United States Bankruptcy Judge

Entered: July 28, 2017

Copies to:

All case participants in CM/ECF

---

[8] The trustee also argues for dismissal because he is the real party in interest, yet is not a named defendant. The Court agrees that the Trustee is the real party in interest, but the argument goes more toward the Trustee's motion to intervene than to dismissal.